**SCHLESINGER LAW OFFICES, P.A.**
Jeffrey L. Haberman, Esq.
Scott P. Schlesinger (*pro hac vice* forthcoming)
Jonathan R. Gdanski (*pro hac vice* forthcoming)
1212 SE Third Avenue,
Fort Lauderdale, FL 33316
Telephone: (954) 320-9507
jhaberman@schlesingerlaw.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK DIVISION

**Case No: 2:20-cv-08030-SDW-LDW**

RUTH LARA, Individually and as
Guardian of her minor child J.S.,
on behalf of themselves and on behalf
of those similarly situated,

Plaintiffs,

v.

PUFF BAR, NICK MINAS,
PATRICK BELTRAN, COOL CLOUDS
DISTRIBUTION, INC.,
UMAIS ABUBAKER,
and SHAHID SHAIKH,

Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS
NICK MINAS AND PATRICK BELTRAN'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

i

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................................ 1

II.    BACKGROUND AND SUMMARY OF ALLEGATIONS .................................................. 2

   A.   Nick Minas ..................................................................................................................... 3

   B.   Patrick Beltran ............................................................................................................... 3

III.   LEGAL STANDARD .......................................................................................................... 4

IV.    ARGUMENT ....................................................................................................................... 6

   A.   This Court Has Personal Jurisdiction Over the Corporate Defendants ............................... 6

      1.   The Exercise of Specific Personal Jurisdiction Over the Corporate Defendants Is Proper Due to the Impact of Their Nationwide Conduct on the Forum State ..................................... 6

      2.   The Corporate Defendants Fail to Provide Affidavits or Other Supporting Evidence to Demonstrate They Were Not Involved in the Underlying Wrongs of Puff Bar ...................... 9

V.     CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Asahi Metal Indust. Co. v. Sup. Ct. of Cal.*,
  480 U.S. 102 (1987) ............................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................... 4

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .................................................................................................... 5, 6, 7, 8

*Duell ex rel. D.D. v. Kawasaki Motors Corp., U.S.A.*,
  962 F. Supp. 2d 723 (D.N.J. 2013) ........................................................................................ 6

*Gehling v. St. George's Sch. of Med., Ltd.*,
  773 F.2d 539 (3d Cir. 1985) ................................................................................................... 5

*General Elec. Co. v. Deutz AG*,
  270 F.3d 144 (3d Cir. 2001) ................................................................................................... 5

*Int'l Shoe Co. v. Wash.*,
  326 U.S. 310 (1945) ............................................................................................................... 5

*Miller Yacht Sales, Inc. v. Smith*,
  384 F.3d 93 (3d Cir. 2004) ............................................................................................ 4, 5, 8

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
  496 F.3d 312 (3d Cir. 2007) ......................................................................................... 4, 6, 7, 8

*Parabit Systems, Inc. v. Synergistics, Inc., et al.*,
  Case No. 2:19-cv-00888 (E.D.N.Y. 2019) ........................................................................ 9, 10

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*,
  819 F.2d 434 (3d Cir. 1987) ................................................................................................... 5

*Remick v. Manfredy*,
  238 F.3d 248 (3d Cir. 2001) ................................................................................................... 5

*Snyder v. Dolphin Encounters Ltd.*,
  235 F. Supp. 2d 433 (E.D. Pa. 2002) ................................................................................ 5

*World–Wide Volkswagen,*
  444 U.S. 286 (1980) ....................................................................................................... 6, 9

**STATUTES**

Fed. R. Civ. P. 4(e) ................................................................................................................. 4

**OTHER AUTHORITIES**

Ann Simoneau, J.D., Director Office of Compliance and Enforcement, CTR. FOR TOBACCO
  PRODS. (June 20, 2019), www.fda.gov/media/128982/download ........................................... 3, 4

Prieur, *National Adolescent Drug Trends in 2018* (Dec. 17, 2018), UNIV. OF MICHIGAN,
  https://isr.umich.edu/news-events/news-releases/national-adolescent-drug-trends-in-2018/ (as
  of Oct. 5, 2019). ............................................................................................................ 2

Plaintiffs, Ruth Lara, individually, and as legal Guardian of her minor child, J.S., on behalf of themselves and on behalf of those similarly situated, by and through undersigned counsel, submit this Response in Opposition to Defendants, Nick Minas and Patrick Beltran's Motion to Dismiss Second Amended Complaint. In further support of this Response, Plaintiffs rely upon and incorporate by reference Plaintiffs' Response in Opposition to Defendant Puff Bar's Motion to Dismiss Second Amended Complaint and incorporate by reference herein the arguments made, and authorities cited therein.

## I.  INTRODUCTION

Defendants, Nick Minas and Patrick Beltran, (referred to collectively herein as the "Corporate Defendants") contend they are not subject to personal jurisdiction, arguing Plaintiffs' Second Amended Complaint ("SAC") contains "minimal allegations" against them and no "specific allegations tying them to New Jersey or the Plaintiffs beyond actions within the ordinary scope of their roles as [corporate officers] of Puff Bar." [Doc. 38, at 2]. This discounts Plaintiffs' claims against Minas and Beltran which are based on the roles they played in maintaining the public health crisis of youth e-cigarette use and targeting school children. Their arguments fail to confront their decisions to aim their conduct nationwide and the impact it had in New Jersey. Similarly, their arguments fail to recognize that the allegations directed toward "Puff Bar" apply equally to the Corporate Defendants—who controlled the actions of Puff Bar.

In their motion, the Corporate Defendants also reject Plaintiffs' allegations, what they characterize as an "afterthought"—ignoring the factual allegations against each Corporate Defendant that easily satisfy the applicable pleading standards. Moreover, the Corporate Defendants do not set forth any facts in any evidentiary form (such as affidavits) to switch the burden of proving personal jurisdiction to the Plaintiffs.

1

The Corporate Defendants are liable for their own personal actions and there is nothing unfair about the Corporate Defendants being held to account for their conduct in this Court. Thus, the Corporate Defendants' Motion to Dismiss should be denied in its entirety.

## II.     BACKGROUND AND SUMMARY OF ALLEGATIONS

The Puff Bar e-cigarette is a disposable pod device engineered to deliver more nicotine and fuel higher levels of consumer addiction than most prior versions of e-cigarettes and combustible cigarettes. Defendants market this highly addictive device as healthy, safe, cool and available in kid-friendly flavors. SAC at ¶ 38. Puff Bar has targeted the youth market, deploying its advertising tactics on today's major social media outlets used by adolescents, including YouTube, TikTok, Instagram, and Reddit. *Id*. at ¶ 67, 74. Puff Bar's collection of fruit flavors epitomizes health and is hardly suggestive of addiction and health harm. *Id*. at ¶ 69. Defendants, Nick Minas and Patrick Beltran, worked in concert with Puff Bar to target school-age children to develop and grow a youth nicotine market. They lured teens using patently youth-oriented advertising campaigns and social media postings, such as #puffbar. None of these things occurred by happenstance. Decisions concerning how to design and market Puff Bar were made by individuals who then also put those plans into motion through Puff Bar.

These actions fueled a public health crisis of youth e-cigarette use at epidemic levels. On December 28, 2018, the University of Michigan's National Adolescent Drug Trends for 2018 reported that increases in adolescent Electronic Nicotine Delivery System ("ENDS") vaping from 2017 to 2018 were the "*largest ever recorded in the past 43 years for any adolescent substance use outcome in the U.S.*"[1] *Id*. at ¶ 29. Former FDA Commissioner, Dr. Scott Gottlieb, had described

---

[1] Prieur, *National Adolescent Drug Trends in 2018* (Dec. 17, 2018), UNIV. OF MICHIGAN, https://isr.umich.edu/news-events/news-releases/national-adolescent-drug-trends-in-2018/ (as of Oct. 5, 2019).

the increase in e-cigarette consumption as an "almost ubiquitous—and dangerous—trend" that is responsible for an "epidemic" of nicotine use among teenagers and identified the two primary forces driving the epidemic as "youth appeal and youth access to flavored tobacco products." *Id.* at 31. Plaintiffs' SAC goes beyond simply asserting that the high-level corporate officers of Puff Bar should be held liable, describing the personal involvement of these particular Defendants in creating and maintaining the youth vaping epidemic. As summarized below and described in Plaintiff's Complaint, Minas and Beltran each personally contributed to this crisis.

### A.   Nick Minas

Nick Minas is involved in designing, manufacturing, promoting, marketing, and selling Puff Bar disposable e-cigarettes, Puff Krush flavored tip add-ons, and other Puff Bar products throughout the United States, including New Jersey. *Id.* at ¶ 13. To advance these efforts, Minas also owned multiple Instagram accounts for Puff Bar, one of which has 22.3K followers. *Id.* at ¶ 77.

On June 20, 2019, the FDA Office of Compliance and Enforcement Center for Tobacco Products sent a notice to Nick Minas, acting on complaints that the company commercially marketed Puff Pods in the United States illegally after the Deeming Rule took effect in 2016.[2] *Id* at ¶ 56. Despite being on the market illegally, Puff Bars are still being sold on various e-commerce websites, including a site owned by Nick Minas—eliquidstop.com. *Id.* at ¶ 160.

### B.   Patrick Beltran

Patrick Beltran is involved in designing, manufacturing, promoting, marketing, and selling Puff Bar disposable e-cigarettes, Puff Krush flavored tip add-ons, and other Puff Bar products

---

[2] Ann Simoneau, J.D., Director Office of Compliance and Enforcement, CTR. FOR TOBACCO PRODS. (June 20, 2019), www.fda.gov/media/128982/download.

throughout the United States, including New Jersey. *Id*. at ¶ 14. To advance these efforts, Beltran also owned multiple Instagram accounts for Puff Bar, one of which has 22.3K followers. *Id*. at ¶ 77.

On June 20, 2019, the FDA Office of Compliance and Enforcement Center for Tobacco Products sent a notice to Patrick Beltran, acting on complaints that the company commercially marketed Puff Pods in the United States illegally after the Deeming Rule took effect in 2016.[3] *Id.* at ¶ 56. Despite being on the market illegally, Puff Bars are still being sold on various e-commerce websites, including a site owned by Patrick Beltran—eliquidstop.com. *Id*. at ¶ 160.

### III.     LEGAL STANDARD

Under Rule 8(a), a plaintiff need only provide "enough facts to state a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. Plaintiffs' negligence claims are based on the negligent design and marketing of a highly addictive nicotine product to youth. Considering the allegations as a whole, plaintiff need only make a *prima facie* showing of jurisdictional facts to avoid the granting of a motion to dismiss and plaintiff is "entitled to have its allegations taken as true and all factual disputes drawn in its favor." *O'Connor v. Sandy Lane Hotel Co., Ltd.,* 496 F.3d 312, 316 (3d Cir. 2007) (quoting *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004)).

A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law. *See* Fed. R. Civ. P. 4(e). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States

---

[3] Simoneau, www.fda.gov/media/128982/download.

Constitution." *Benitez v. JMC Recycling Sys., Ltd.*, 97 F. Supp. 3d at 581 (quoting *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d at 96). Due process requires that each defendant have "minimum contacts" with the forum state and that the Court's exercise of jurisdiction over the parties comports with "traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945)). "Minimum contacts must have a basis in 'some act by which defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.'" *Asahi Metal Indust. Co. v. Sup. Ct. of Cal.,* 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)).

Within this framework, courts examine personal jurisdiction under two distinct theories: general and specific jurisdiction. *See Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir. 2001). "General jurisdiction is based upon the defendant's continuous and systematic contacts with the forum and exists even if the plaintiff's cause of action arises from defendant's non-forum related activities." *Id.* (citations omitted). The Third Circuit "requires a very high showing before a court may exercise general jurisdiction." *Snyder v. Dolphin Encounters Ltd.,* 235 F. Supp. 2d 433, 437 (E.D. Pa. 2002) (citing *Gehling v. St. George's Sch. of Med., Ltd.,* 773 F.2d 539, 542 (3d Cir. 1985)). Plaintiffs must show "significantly more than minimum contacts to establish general jurisdiction." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987).

To establish specific jurisdiction, a plaintiff must demonstrate that "a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *General Elec. Co. v. Deutz AG,* 270 F.3d 144, 150 (3d Cir. 2001) (citing *Rudzewicz,* 471 U.S. at 472). There are three steps to the specific jurisdiction inquiry: (1) the defendant must have purposefully directed its activities at the forum; (2) the litigation must

5

"arise out of or relate to" at least one of those activities; and (3) if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comports with 'fair play and substantial justice.' " *O'Connor,* 496 F.3d at 317 (quoting *Burger King,* 471 U.S. at 463).

If the sale of a product to a resident of a foreign state is not an isolated occurrence, but "arises from the efforts of the manufacturer or distributor," it is not unreasonable to subject the seller of the product to suit in that state if "its allegedly defective merchandise has there been the source of injury to its owner or to others." *Duell ex rel. D.D. v. Kawasaki Motors Corp., U.S.A.*, 962 F. Supp. 2d 723, 728 (D.N.J. 2013) (quoting *World–Wide Volkswagen,* 444 U.S. 286, 297 (1980)).

## IV.     ARGUMENT

In Response to Plaintiffs' First Amended Complaint, Defendants, Minas and Beltran, submitted a ten-page Motion to Dismiss for lack of personal jurisdiction. [Doc. 12-1]. Specifically, Minas and Beltran argued that the Plaintiffs failed to plead facts to support an exercise of general or specific personal jurisdiction over them. *Id.* at 4–9. Plaintiffs SAC addressed these perceived deficiencies raised by Minas and Beltran. [Doc. 33]. The Corporate Defendants' remarkably bare Motion to Dismiss Plaintiffs' SAC appears to largely abandon the personal jurisdiction defense it raised previously (although not expressly abandoned). *See* [Doc. 38]. However, should the Corporate Defendants remain reliant on the merits of their Motion to Dismiss Plaintiffs' First Amended Complaint, those arguments nevertheless fail for the following reasons.

    **A.**     **This Court Has Personal Jurisdiction Over the Corporate Defendants.**

        1.     **The Exercise of Specific Personal Jurisdiction Over the Corporate Defendants Is Proper Due to the Impact of Their Nationwide Conduct on the Forum State.**

Each Corporate Defendant is properly before this Court. Defendants, Minas and Beltran claim they are not subject to personal jurisdiction in Morris County, New Jersey, where they

caused harm. The exercise of specific personal jurisdiction over the Corporate Defendants is proper due to their conduct targeting states nationwide and the impact of their conduct in Morris County, New Jersey, where Plaintiffs' filed their Complaint. Defendants intentionally availed themselves of the markets in this State through the promotion, marketing, distribution and sale of the products at issue in this lawsuit to render the exercise of jurisdiction by this Court permissible under New Jersey law and the U.S. Constitution. *Id*. at ¶ 19. Because this conduct was designed to, and did, impact purchasers in New Jersey, Minas and Beltran established "minimum contacts" such that they are subject to specific jurisdiction in the New Jersey courts. *Id*. at ¶ 13, 14.

### a. *The Corporate Defendants purposefully directed their activity toward the forum state.*

As the Third Circuit has explained, the first prong of the jurisdictional inquiry may be satisfied by a defendant who purposefully directs its activities at the forum. When defendant has availed himself of the privilege of conducting business in a forum, jurisdiction cannot be avoided merely because the defendant did not physically enter the forum state. *Burger King*, 471 U.S. 462. The Corporate Defendants implemented their strategy in every state, marketed Puff Bar nationwide, and shipped Puff Bar nationwide. With the Corporate Defendants' knowledge, Puff Bar products were being shipped nationwide, including the forum state of New Jersey, as they intended.

### b. *The claims arise out of and relate to the Corporate Defendants' forum-related activities.*

Claims "arise out of or relate to" forum-related contacts when those contacts are the cause of a plaintiff's claims. The Defendant's contacts with the forum state need not be the proximate cause of the plaintiff's injuries. *O'Connor,* 496 F.3d at 320. The Third Circuit has chosen not to adopt a definitive test to determine how close the relation must be between the contact and injury for specific jurisdiction to apply. *Id.* When deciding tort claims, the Court should "approach[ ]

7

each case individually and take[ ] a realistic approach." *Id.* (quoting *Miller Yacht Sales, Inc.,* 384 F.3d at 99–100). A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant. *Miller Yacht Sales, Inc.*, 384 F.3d at 96.

Plaintiffs' injuries occurred in Morris County, which is in the forum state of New Jersey. If not for the Corporate Defendants' efforts to maintain a nationwide youth nicotine market—by creating the product to appeal to youth, by marketing that product to youth nationally (including in the forum state), by establishing a nationwide distribution network, by establishing a website that offered Puff Bar for sale nationwide, and by taking orders and shipping products nationwide (including to the forum state)—Plaintiffs would not have been injured. And as set forth above, Corporate Defendants intended for Puff Bar to be marketed and sold to youth nationwide, including in the forum state. Plaintiffs' claims directly arise out of and relate to these forum-related contacts.

### c. *The exercise of personal jurisdiction over the Corporate Defendants would be reasonable.*

Once the first two factors for exercising personal jurisdiction are established, a court may consider whether the exercise of jurisdiction otherwise "comports with 'fair play and substantial justice.'" *O'Connor,* 496 F.3d 312 at 317 (quoting *Burger King,* 471 U.S. at 463). Where a defendant has purposefully directed his activities at forum residents, the burden then shifts to the Defendant to present a compelling case that the exercise of jurisdiction over them is unreasonable. *Burger King*, 471 U.S. 462 at 477.

When considering whether the exercise of jurisdiction is reasonable, courts may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's

interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson,,* 444 U.S. 286). Here, because these factors support the exercise of jurisdiction, the Corporate Defendants cannot satisfy their burden of making a "compelling case" for denying jurisdiction.

As described above, the Corporate Defendants targeted the national market, including the forum states, with Puff Bar products and marketing circulated nationwide which weighs heavily in favor of exercising jurisdiction. The interests of the forum state and the Plaintiffs' interest in their choice of forum also weigh heavily in favor of exercising jurisdiction. The forum state has an interest in protecting its citizens from harm and enforcing its laws.

 2. **The Corporate Defendants Fail to Provide Affidavits or Other Supporting Evidence to Demonstrate They Were Not Involved in the Underlying Wrongs of Puff Bar.**

In support of their position, the Corporate Defendants fail to provide the Court with affidavits or any other form of sworn evidence that would switch the burden of proving personal jurisdiction to the Plaintiffs. This is a critical error.

In *Parabit Systems, Inc. v. Synergistics, Inc., et al.*, Case No. 2:19-cv-00888 (E.D.N.Y. 2019), the defendants similarly filed a motion to dismiss the plaintiff's complaint for lack of personal jurisdiction. *Parabit Systems, Inc.* [Doc. 29]. The district court, however, explained that motions to dismiss are "mainly focused on the adequacy of allegations of personal jurisdiction in the complaint, but plaintiff has no obligation under Rule 8 to plead any allegations pertaining to personal jurisdiction, and so a complaint cannot inadequately allege the basis for personal jurisdiction." *Parabit Systems, Inc.*, Order denying in part Def. Mot. to Dismiss (Apr. 5, 2019).

The district court also determined that the defendant had not set forth any facts in any evidentiary form to switch the burden of proving personal jurisdiction to the plaintiff: "***defendants***

9

*have merely made allegations in their brief, but have submitted no affidavits or other evidence to support those statements*.  Although plaintiff has the burden of proving personal jurisdiction when it is properly challenged, defendants had the burden of going forward to show at least a colorable basis for challenging personal jurisdiction, and unsupported statements in a brief do not do that." *Id.* (emphasis added).  As a result, the district court denied the motion to dismiss for lack of personal jurisdiction.  *See id.*

The same result should follow here.  The Corporate Defendants merely launch unsupported allegations and offered "no affidavits or other evidence to support those statements." *See id.*  The Corporate Defendants offer nothing to demonstrate that they were not involved in the underlying wrongs of Puff Bar; they remain charged with all allegations which are directed to Puff Bar.  Consequently, for the reasons stated in *Parabit Systems, Inc.*, the Court should deny the Corporate Defendants' motion to dismiss for lack of personal jurisdiction.

## V.   CONCLUSION

For the reasons identified above, Plaintiffs respectfully request that this Court Deny Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint.

DATED:  November 2, 2020          Respectfully submitted,

*/s/ Jeffrey L. Haberman*
Jeffrey L. Haberman, Esq.
**SCHLESINGER LAW OFFICES, P.A.**
1212 SE Third Avenue,
Fort Lauderdale, FL 33316
Telephone: (954) 320-9507
jhaberman@schlesingerlaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2020, I served a copy of the foregoing on the Clerk of Court by CM/ECF, which will provide automatic notification to all parties and counsel of record.

By: */s/Jeffrey L. Haberman*
Jeffrey L. Haberman, Esq.