<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUTH LARA, *individually and on behalf of J.S. and all others similarly situated*, | Civil Action No. 20-8030 (SDW) (LDW) |
| Plaintiff, | |
| v. | **OPINION** |
| COOL CLOUDS DISTRIBUTION, INC., UMAIS ABUBAKER, SHAHID SHAIKH, PUFF BAR, NICK MINAS, and PATRICK BELTRAN, | February 16, 2021 |
| Defendants. | |

**WIGENTON,** District Judge.

Before this Court are Defendants Puff Bar, Patrick Beltran, Nick Minas, Umais Abubaker, Shahid Shaikh, and Cool Clouds Distribution, Inc.'s (collectively, "Defendants") Motions to Dismiss Plaintiff Ruth Lara's ("Plaintiff") First Amended Class Action Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and 12(b)(2).  This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Rule 78.  For the reasons stated below, Puff Bar, Patrick Beltran, and Nick Minas' Motions to Dismiss pursuant to Rule 12(b)(6) are **GRANTED in part** and **DENIED in part**, and Umais Abubaker, Shahid Shaikh, and Cool Clouds Distribution, Inc.'s Motion to Dismiss pursuant to Rule 12(b)(2) is **GRANTED**.

## I.    BACKGROUND

Plaintiff brings this class action individually and on behalf of her minor child, J.S., as well

1

as all those similarly situated who have purchased and used Puff Bar brand products.[1]  (D.E. 33 ¶ 1.)  Defendant Puff Bar designs, manufactures, markets, and sells disposable e-cigarettes and other accessory products under the Puff Bar brand.[2]  (*Id.* ¶ 12.)  PB e-cigarettes are pocket-sized, buttonless, disposable devices that have no removeable pieces or charging ports.  (*Id.* ¶¶ 33–34.)  Allegedly "easy-to-use," the internal battery is automatically activated when users vape e-liquid contained within each cartridge.  (*Id.* ¶¶ 34–35.)  The Complaint contains numerous pages of information on the harmful health effects of e-cigarettes and the current epidemic in the United States among young consumers of Electronic Nicotine Delivery System ("ENDS") products.[3]  (*Id.* ¶¶ 21–32, 78–113.)  The following is a summary of Plaintiff's allegations.

Plaintiff maintains that because PB e-cigarettes are made with a nicotine salt formula, they are designed to deliver higher levels of nicotine than earlier e-cigarette products.  (*Id.* ¶¶ 36, 38, 117, 140.)  Puff Bar's e-liquid formula allegedly delivers nicotine more efficiently and in a less-irritating manner than older e-cigarette products and traditional, combustible cigarettes.  (*Id.* ¶¶ 36, 38, 41, 43, 44.)  For example, e-cigarettes made with an alkaline form of nicotine (known as "free-base nicotine") are purportedly more bitter and irritate the throat when inhaled, which creates a harsh feeling known as the "throat hit."  (*Id.* ¶ 39.)  Plaintiff avers that e-cigarettes with a salt formula reduce the throat hit and thus appeal to nonsmokers, particularly the youth.  (*Id.* ¶¶ 42–44.)  By reducing the throat hit, Plaintiff claims that PB e-cigarettes mask "the amount of nicotine

---

[1] Although J.S. was 17 years old when Plaintiff filed the Complaint, it is unclear whether he has since reached the age of majority by the date of this Court's Opinion.  (D.E. 33 ¶ 7.)  The docket reflects that Ruth Lara is the only named plaintiff notwithstanding the parties' reference to "plaintiffs" throughout their briefing.  (*See* D.E. 37-1; D.E. 44.)

[2] Plaintiff uses "Puff Bar" interchangeably throughout the Complaint to refer to both defendant Puff Bar and its e-cigarette product.  (*See, e.g.*, D.E. 33 ¶¶ 4–6.)  Where discernable, this Court refers to the e-cigarette product as "PB e-cigarettes."  In addition, the Complaint occasionally refers to other Puff Bar products such as "Puff Krush," a flavored pod add-on that can be used with other e-cigarette brands.  (D.E. 33 ¶¶ 4, 12, 47.)

[3] For example, among other ailments, Plaintiff alleges that e-cigarettes can cause asthma, serious lung disease, acute respiratory failure, seizures, and increased risk of stroke and heart attack.  (D.E. 33 ¶¶ 91, 97, 99–100, 102, 105–06.)

being delivered" and remove the "physiological drawbacks of inhaling traditional free-base nicotine," which eliminates "the principal barrier to nicotine consumption and addiction."  (*Id.* ¶ 43.)  In addition, Plaintiff cites to various sources to support the assertion that adolescents and youth are especially vulnerable to nicotine addiction.  (*Id.* ¶¶ 5, 78–86.)

Puff Bar products are allegedly marketed to America's youth using bold, bright-colored packaging and come in a variety of "kid-friendly" flavors, including Sour Apple, Cool Mint, Blue Razz, and Pink Lemonade, among others.  (*Id.* ¶¶ 37, 45, 68–69.)  Moreover, Plaintiff maintains that Puff Bar's website contained false and misleading statements and omissions regarding the nicotine content in Puff Bar products, such as: "Original Puff Bar [is] equivalent to one pack of 20 cigarettes."  (*Id.* ¶ 114.)  Although PB e-cigarettes are represented to contain nicotine quantities equivalent to one package of traditional cigarettes, (*id.* ¶¶ 114, 116, 140), one researcher found that a single PB e-cigarette can contain nicotine quantities equivalent to roughly two to three packs of traditional cigarettes.  (*Id.* ¶ 115.)

In the instant matter, J.S. began purchasing Puff Bar products from retail stores in New Jersey after their release in early 2019.[4]  (*Id.* ¶¶ 4, 7, 10.)  J.S. has seen Puff Bar advertisements and purportedly used Puff Bar products "as a direct result of the numerous kid-friendly flavors offered by Puff Bar."  (*Id.* ¶¶ 7, 9.)  Neither Plaintiff nor J.S. were aware that (i) PB e-cigarettes contain more nicotine than a package of traditional cigarettes, or (ii) Puff Bar developed its products "to create and sustain a nicotine addiction."  (*Id.* ¶ 11.)  Plaintiff avers that J.S. has a nicotine addiction "and other physical and personal injuries" as a result of Defendants' allegedly unlawful conduct.  (*Id.*)

---

[4] Plaintiff also maintains that Puff Bar launched its products in 2019 without obtaining premarket review and authorization from the Federal Food and Drug Administration ("FDA") in violation of the FDA's "Deeming Rule" (*see infra* note 13).  (D.E. 33 ¶¶ 49, 54–56.)

Plaintiff brings this action against Puff Bar—a California corporation with its principal place of business in Glendale, California—and five other defendants: (i) Patrick Beltran, Puff Bar's Chief Financial Officer and a citizen of California; (ii) Nick Minas, Puff Bar's Chief Executive Officer and a citizen of California; (iii) Cool Clouds Distribution, Inc. ("Cool Clouds"), a California corporation that allegedly "manufactures, designs, sells, markets, promotes and distributes" Puff Bar's products with its principal place of business in Los Angeles, California; (iv) Umais Abubaker, Cool Clouds' Chief Executive Officer and a citizen of California; and (v) Shahid Shaikh, Cool Clouds' Chief Operating Officer and citizen of California. (*Id.* ¶¶ 12–17.)

As explained further below, Plaintiff brings Count I under the New Jersey Product Liability Act ("NJPLA"), *see* N.J. Stat. Ann. § 2A:58C-1 *et seq.*, premised on design defect and failure to warn.[5] (*Id.* ¶¶ 128–158.) Plaintiff also brings Count II, a claim for a preliminary and permanent injunction, to prevent the sale, distribution, and marketing of Puff Bar products. (*Id.* ¶¶ 159–165.) Before this Court are three motions to dismiss the Complaint. (D.E. 37 (Puff Bar); D.E. 38 (Minas and Beltran); D.E. 47 (Abubaker, Shaikh, and Cool Clouds).) Plaintiff opposed each motion separately. (D.E. 43; D.E. 44; D.E. 55.) The motions were fully briefed on December 22, 2020. (D.E. 51; D.E. 52; D.E. 56.)

## II.   LEGAL STANDARDS

### A.  Motion for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure ("Rule") 4(e) "authorizes personal jurisdiction over non-

---

[5] Plaintiff embedded "claims and causes of action" under Count I sounding in negligence, breach of implied warranty of merchantability, and breach of implied warranty of fitness. (D.E. 33 ¶ 158.) This Opinion does not reference these purported "claims and causes of action" because the pertinent parties do not raise them in their briefing. (*See* D.E. 37-1; D.E. 44.) To the extent Plaintiff intended to assert separate claims, it appears that they would be subsumed under the NJPLA. *See e.g.*, *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 817–19 (D.N.J. 2019); *Becker v. Smith & Nephew, Inc.*, No. 14-5452, 2015 WL 268857, at *2 (D.N.J. Jan. 20, 2015); *Koruba v. American Honda Motor Co., Inc.*, 935 A.2d 787, 795 (N.J. App. Div. 2007) ("[T]he PLA no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for 'harm[,]' [including personal injury,] caused by a defective product or an inadequate warning.") (internal quotations omitted).

resident defendants to the extent permissible under the law of the state where the district court sits." *Pennzoil Prod. Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998). A federal court in New Jersey exercises jurisdiction to the extent permitted by New Jersey law. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). New Jersey's long-arm statute provides for the exercise of jurisdiction over non-residents "to the uttermost limits permitted by the United States Constitution." *Charles Gendler & Co., Inc. v. Telecom Equip. Corp.*, 102 N.J. 460, 469 (1986) (quoting *Avdel Corp. v. Mecure*, 58 N.J. 264, 268 (1971)); N.J. Ct. R. 4:4–4.

A court can assert either specific or general jurisdiction over a defendant. *Spuglio v. Cabaret Lounge*, 344 F. App'x 724, 725 (3d Cir. 2009). Specific jurisdiction is established through a minimum contacts analysis. *See Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945); *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). In the Third Circuit, proving specific jurisdiction requires establishing the following three requirements: (1) "the defendant must have purposefully directed [its] activities at the forum"; (2) "the litigation must arise out of or relate to at least one of those activities"; and (3) if the first two requirements are met, the exercise of jurisdiction must "otherwise comport[ ] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal citations and quotations omitted); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). "A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant." *Miller Yacht*, 384 F.3d at 96 (citing *Burger King Corp.*, 471 U.S. at 475 n.18).

General jurisdiction, by contrast, requires the defendant to have "systematic and continuous" contacts with the forum state. *Spuglio*, 344 F. App'x at 725 (quoting *Int'l Shoe*, 326 U.S. at 320). These contacts need not relate to the subject matter of the litigation. *Id.* at 725–26. The facts required to establish sufficient contacts for general jurisdiction must be "extensive and

persuasive." *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982). Thus, the plaintiff must demonstrate "significantly more than minimum contacts." *Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).

When analyzing a motion to dismiss for lack of personal jurisdiction, the Court must accept plaintiff's allegations as true and resolve disputes in plaintiff's favor. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Plaintiff's "allegations may be contradicted by the defendant through opposing affidavits or other evidence, at which point the plaintiff must respond with 'actual proofs, not mere allegations.'" *Am. Bd. of Internal Med. v. Rushford*, No. 14-6428, 2015 WL 5164791, at *5 (D.N.J. Sept. 2, 2015) (quoting *Patterson by Patterson v. FBI*, 893 F.2d 595, 603 (3d Cir. 1990)). Thus, if a defendant challenges a court's exercise of personal jurisdiction, "the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction" with sworn affidavits or other competent documentary evidence. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992); *Miller Yacht*, 384 F.3d at 101, n.6. The facts must demonstrate that the defendant purposefully availed itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987). If an evidentiary hearing is not held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).

**B. Motion to Dismiss**

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 555). As the Supreme Court has explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 556–57, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556–57, 570). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Furthermore, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. The Third Circuit has explained that "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint

should be dismissed for failure to show "that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    DISCUSSION

### A.    Motion for Lack of Personal Jurisdiction

Cool Clouds, Abubaker, and Shaikh (collectively, "Cool Clouds Defendants") move to dismiss Plaintiff's Complaint for lack of personal jurisdiction.  (D.E. 47-1.)  Plaintiff alleges that Cool Clouds "manufactures, designs, sells, markets, promotes and distributes" Puff Bar products that are purposefully sold throughout the United States, including New Jersey, and that Abubaker and Shaikh are involved in the same activities as Cool Clouds' Chief Executive Officer and Chief Operating Officer.[6]  (D.E. 33 ¶¶ 15–17; *see also* D.E. 55 at 7–8.)  Because Plaintiff's claims arose from these activities that impacted New Jersey purchasers, she argues that this Court has specific jurisdiction over the Cool Clouds Defendants.[7]  (D.E. 33 ¶¶ 16–17; *see id.* ¶ 15; D.E. 55 at 7–8.)

At issue is whether the Cool Clouds Defendants had sufficient "minimum contacts" with the forum state, such that they would reasonably expect to be hauled into court in New Jersey.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court focuses on the "relationship among the defendant, the forum, and the litigation."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775

---

[6] Abubaker concedes that he was the Chief Executive Officer and former sole shareholder of Cool Clouds.  (D.E. 47-2 ("Abubaker Decl.") ¶ 6.)  Plaintiff does not dispute Shaikh's assertion that he served as Abubaker's "personal and professional assistant," and never held a managerial or executive position at Cool Clouds.  (*Compare* D.E. 55, *with* D.E. 47-3 ("Shaikh Decl.") ¶ 6.)

[7] Although there is no jurisdictional theory asserted as to Cool Clouds in the Complaint, it appears that Plaintiff intends to invoke this Court's specific jurisdiction over all Cool Clouds Defendants.  (*See* D.E. 33 ¶¶ 15–17; *see also* D.E. 55 at 7–8.)  General jurisdiction over the Cool Clouds Defendants is not warranted.  Plaintiff proffers nothing to suggest that Cool Clouds had such extensive "continuous or systematic" contacts to deem the out-of-state corporate defendant "at home" in New Jersey.  *See Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017).  Moreover, general jurisdiction over Abubaker and Shaikh is improper because they are domiciled in California.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (stating that "the paradigm forum for exercise of general jurisdiction is the individual's domicile").

(1984). Thus, the non-resident defendants' "suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "Physical entrance [into the forum] is not required." *O'Connor*, 496 F.3d at 317. However, there must be at least "a single deliberate contact" with the forum state that relates to the cause of action. *Goodman v. Goodman*, No. 04-03869, 2009 WL 3756848, at *4 (D.N.J. Nov. 5, 2009) (citing *United States Golf Ass'n v. United States Amateur Golf Ass'n*, 690 F. Supp. 317, 320 (D.N.J. 1988)).

Plaintiff fails to establish sufficient minimum contacts between the Cool Clouds Defendants and the forum state of New Jersey.[8] As a preliminary matter, Plaintiff does not contest that Cool Clouds ceased operations in February 2020, nearly seven months before filing the Complaint. (D.E. 47-1 at 2, 15; Abubaker Decl. ¶¶ 10, 24–26; *see generally* D.E. 55.) Nor does Plaintiff rebut the assertion that none of the Cool Clouds Defendants owned or leased property in New Jersey. (D.E. 47-1 at 3; Abubaker Decl. ¶¶ 4, 23–24; Shaikh Decl. ¶ 4; *see generally* D.E. 55.) Similarly, the Cool Cloud Defendants contend, and Plaintiff does not dispute, that they never resided or transacted in New Jersey. (D.E. 47-1 at 3, 14; Abubaker Decl. ¶¶ 2–3, 17; Shaikh Decl. ¶¶ 2–3; *see generally* D.E. 55.) Indeed, there is no evidence that Cool Clouds, Abubaker, or Shaikh solicited business in or directed any action toward New Jersey, either in general or specifically in relation to the conduct underlying this action. *See Levy v. Jaguar Land Rover N. Am., LLC.*, No. 19-13497, 2020 WL 563637, at *6 (D.N.J. Feb. 4, 2020) (noting that defendant's "design,

---

[8] Plaintiff submitted a March 6, 2020 letter addressed to Abubaker from the United States Congress Subcommittee on Economic and Consumer Policy. (*See* D.E. 55-1.) While this letter might suggest that Puff Bar's products undercut the FDA's partial flavor ban of e-cigarette products (*see generally id.*), it does not support the notion that the Cool Clouds Defendants targeted their conduct toward the forum State of New Jersey for purposes of the "minimal contacts" analysis. Consequently, because Plaintiff failed to proffer "affidavits or other competent evidence in support of jurisdiction over [the Cool Clouds Defendants]," she has not satisfied her evidentiary burden and the claims against the Cool Clouds Defendants are subject to dismissal solely on this ground. *See Moreno v. Detroit Spectrum Painters, Inc.*, No. 10-3696, 2011 WL 181417, at *2 (D.N.J. Jan. 19, 2011). However, because the Cool Clouds Defendants provided declarations from Abubaker and Shaikh, this Court will consider whether the alleged facts therein are sufficient to confer personal jurisdiction. *See id.*

development, manufacture, assembly, distribution, and sale of [] vehicles" in New Jersey did not tie plaintiffs' claims to the forum state).  Even assuming the Cool Cloud Defendants' "efforts to exploit a national market necessarily included [New Jersey] as a target, [] those efforts simply do not constitute the type of deliberate contacts within [New Jersey] that could amount to purposeful availment of the privilege of conducting activities in th[is] state."  *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009).

In the same vein, Plaintiff cannot establish specific jurisdiction via third party distributors to whom the Cool Clouds Defendants sold Puff Bar products which eventually landed in New Jersey.[9]  *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.");  *accord D'Jamoos*, 566 F.3d at 103;  *Ferguson v. Aon Risk Servs. Companies, Inc.*, No. 19-9303, 2020 WL 914702, at *7 (D.N.J. Feb. 26, 2020).  Here, Plaintiff provides no evidence on how Puff Bar products reached New Jersey through the Cool Clouds Defendants' purported "nationwide distribution network."  (*See* D.E. 55 at 8.)  Accordingly, she lacks support for the contention that they deliberately conducted activities aimed at New Jersey. *See D'Jamoos*, 566 F.3d at 103;  *Mitzi Int'l Handbags & Accessories, Ltd. v. All. Sales & Distribution, Inc.*, No. 11-2875, 2012 WL 12906482, at *5–6 (D.N.J. Feb. 10, 2012) (declining to exercise personal jurisdiction over defendant under the stream of commerce theory where plaintiff "failed to demonstrate that [d]efendant ha[d] sufficient minimum contacts with New Jersey").

Similarly, Plaintiff offers no evidence that the Cool Clouds Defendants intentionally

---

[9] Abubaker declared that Cool Clouds sold Puff Bar products to wholesalers and distributors who subsequently sold the products to other wholesalers or retailers.  (Abubaker Decl. ¶¶ 12–13.)  Cool Clouds never sold Puff Bar products to an entity or individual in New Jersey.  (*See id.* ¶¶ 13, 17.)

targeted New Jersey with their purported website.[10]   (*See* D.E. 55 at 8); *see, e.g.*, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (holding that evidence of the defendant's intentional targeting of its website to the forum state was required to satisfy the "purposeful availment" prong of the minimum contacts analysis); *accord Miller Yacht*, 384 F.3d at 106.  Based on the current record, the Cool Clouds Defendants never sold or advertised Puff Bar products in New Jersey—via the Internet or otherwise.  (D.E. 47-1 at 2–3, 14; Abubaker Decl. ¶ 16 (affirming that "Cool Clouds did not sell products via the [I]nternet"); *id.* ¶¶ 17–21.)  Plaintiff's unsupported assertion regarding the Cool Clouds Defendants' website is insufficient to establish a prima facie case of personal jurisdiction.  *See Gorbaty v. Mitchell Hamline Sch. of Law*, No. 18-16691, 2019 WL 3297211, at *3 (D.N.J. July 23, 2019); *Mitzi*, 2012 WL 12906482, at *5–6.

For these reasons, Plaintiff fails to satisfy her burden of establishing personal jurisdiction over the Cool Clouds Defendants.  Accordingly, all claims asserted against the Cool Clouds Defendants are dismissed.[11]

---

[10] Plaintiff does not distinguish between the website purportedly established by the Cool Clouds Defendants (*see generally* D.E. 55) and the website allegedly run by defendant Puff Bar.  (*See* D.E. 33 ¶¶ 52–53, 73, 114.)  Neither the Complaint nor Plaintiff's opposition brief contain additional information on the Cool Clouds Defendants' alleged website.  (*See generally* D.E. 33; D.E. 55.)

[11] Plaintiff requests jurisdictional discovery in the alternative.  (*See* D.E. 55 at 10–11.)  The Third Circuit has cautioned that jurisdictional discovery is appropriate after plaintiffs "present[] factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'"  *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).  Beyond the Complaint's conclusory allegations and the exhibit referenced above (*see supra* note 8), Plaintiff failed to submit sworn affidavits, documents, or other competent evidence to withstand the Cool Clouds Defendants' jurisdictional challenge.  Thus, jurisdictional discovery is not warranted, and Plaintiff's request is denied.  *See, e.g.*, *Malik*, 710 F. App'x at 565; *see also Traisman v. Khmelnitsky*, No. 19-11045, 2020 WL 2847751, at *10 (D.N.J. June 1, 2020) (stating that an opportunity for jurisdictional discovery based on bare allegations in plaintiff's complaint "would be tantamount to permitting a fishing expedition").

Lastly, Plaintiff construes one vague sentence in Minas and Beltran's moving brief as a jurisdictional challenge.  (*See* D.E. 43.)  In reply, Minas and Beltran waived Plaintiff's perceived personal jurisdiction dispute.  (*See* D.E. 52 at 1, n.1 (stating that Minas and Beltran did not move to dismiss based on Rule 12(b)(2)).)

### B.  Motion to Dismiss

Defendant Puff Bar, joined by Minas and Beltran,[12] move to dismiss the Complaint on four grounds.  First, Puff Bar contends that Plaintiff's NJPLA claims are expressly preempted by the Federal Food, Drug and Cosmetic Act ("FDCA") as amended by the Family Smoking Prevention and Tobacco Control Act, 21 U.S.C. § 387 *et seq.* ("TCA").  (D.E. 37-1 at 12–16.)  Second, and in the alternative, Puff Bar argues that Plaintiff's NJPLA claims are impliedly preempted.  (D.E. 37-1 at 16–20.)  Third, Puff Bar avers that Plaintiff fails to adequately plead claims under the NJPLA.  (*Id.* at 20–25.)  Finally, Puff Bar maintains that Plaintiff's second cause of action for a preliminary and permanent injunction is improper.  (*Id.* at 25.)

At the outset, it appears that there are no relevant decisions from the Third Circuit or our sister courts addressing express or implied preemption under the TCA as it relates to state law products liability claims and an ENDS tobacco product.  Three decisions from the Northern District of California deal with similar, but not identical, ENDS products and claims which are referenced below.  *See Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178 (N.D. Cal. 2018) ("*Colgate I*"); *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019) ("*Colgate II*"); *In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 19-2913, 2020 WL 6271173 (N.D. Cal. Oct. 23, 2020) ("*In re JUUL Labs*").

### i.  Preemption

The Constitution's Supremacy Clause, U.S. Const. art. VI, cl. 2, "invalidates state law that 'interferes with or is contrary to federal law.'"  *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 287 (3d Cir. 2020) (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)).  There are three ways in which federal law or regulations can preempt state law: (1) express preemption; (2) implied preemption

---

[12] This Court refers to defendant Puff Bar as the movant in Section III.B of this Opinion and notes that all arguments are equally asserted by Minas and Beltran.  (D.E. 38.)

and (3) field preemption.  *Id.*; *see also Roth v. Norfalco LLC*, 651 F.3d 367, 374 (3d Cir. 2011).

"Express preemption applies where Congress, through a statute's express language, declares its

intent to displace state law."  *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (citing

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)).  Implied preemption

occurs "when it is impossible to comply with both state and federal requirements, or where state

law stands as an obstacle to the accomplishment and execution of [Congress's] full purposes and

objectives."  *Roth*, 651 F.3d at 374 (internal citations and quotations omitted); *see also Farina*,

625 F.3d at 115.  Finally, field preemption occurs when "federal law leaves no room for state

regulation and [ ] Congress had a clear and manifest intent to supersede state law in that field."

*Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 688 (3d Cir. 2016) (noting that "[w]here

Congress expresses an intent to occupy an entire field, States are foreclosed from adopting any

regulation in that area, regardless of whether that action is consistent with federal standards").

The Third Circuit has noted that "[i]n every preemption case, our inquiry is guided by two

principles.  First, the intent of Congress is the 'ultimate touchstone' of preemption analysis."

*Farina*, 625 F.3d at 115 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  This requires

examination of Congress's express statements as well as the "structure and purpose of the statute

as a whole, as revealed . . . through the reviewing court's reasoned understanding of the way in

which Congress intended the statute and its surrounding regulatory scheme to affect business,

consumers, and the law."  *Medtronic*, 518 U.S. at 486.  Second, there is a presumption against

preemption such that "Congress did not intend to preempt state law absent evidence of a 'clear and

manifest' intent."  *Freedman v. Redstone*, 753 F.3d 416, 430 (3d Cir. 2014) (citing *Wyeth v. Levine*,

555 U.S. 555, 565 (2009)).

###### i.     Relevant Statutes and Regulations

Enacted in 1938, the FDCA gives the FDA authority to regulate and oversee the safety of food, drugs, and cosmetics.  21 U.S.C. § 301 *et seq*.  The TCA was enacted in 2009 and gave the FDA authority to regulate tobacco products under the FDCA.  *See* 21 U.S.C. § 387a(a).  Pursuant to the TCA, a "tobacco product" is defined as: "any product made or derived from tobacco that is intended for human consumption, including any component, part, or accessory of a tobacco product."  21 U.S.C. § 321(rr)(1).  The FDA finalized what has been coined the "Deeming Rule" on May 10, 2016, which expanded "covered tobacco products" under the FDA's regulatory purview to include ENDS products such as PB e-cigarettes.[13]  *See* 81 Fed. Reg. 28973 (2016).  The TCA and its corresponding regulations address the preemption of state law requirements concerning tobacco products and provides for certain exceptions.  The following provisions are relevant for the purposes of Puff Bar's motion.

Pursuant to Section 916, *see* 21 U.S.C. § 387p, "Preservation of State and local authority," the TCA, provides:

(a)(2) Preemption of certain State and local requirements

(A) In general

No State or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products.

(B) Exception

Subparagraph (A) does not apply to requirements relating to the sale, distribution, possession, information reporting to the State,

---

[13] *See* "Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco Control Act; Restrictions on the Sale and Distribution of Tobacco Products and Required Warning Statements for Tobacco Products."  81 Fed. Reg. 28973.

14

> exposure to, access to, the advertising and promotion of, or use of,
> tobacco products by individuals of any age, or relating to fire safety
> standards for tobacco products. . . .
>
> (b) Rule of construction regarding product liability
>
> No provision of this subchapter relating to a tobacco product shall
> be construed to modify or otherwise affect any action or the liability
> of any person under the product liability law of any State.

21 U.S.C. § 387p.  In addition, warning labels[14] on covered tobacco products that contain nicotine

must include the following language on product packaging in specified locations, colors, fonts,

and sizes: "WARNING: This product contains nicotine. Nicotine is an addictive chemical"

(hereinafter, "Nicotine Addictiveness Label Requirement").  81 Fed. Reg. at 28988; 21 C.F.R. §

1143.3(a)(1)–(2).

### ii.    Express Preemption

Puff Bar contends that Plaintiff's NJPLA claims should not fall under the TCA's rule of

construction regarding state product liability law, 21 U.S.C. § 387p(b), *de facto*.  (*See id.* at 12–

13; D.E. 51 at 4); 21 U.S.C. § 387p(b) ("No provision of this subchapter relating to a tobacco

product shall be construed to modify or otherwise affect any action or the liability of any person

under the product liability law of any State." ("Savings Clause")).  Specifically, Puff Bar argues

that Plaintiff's NJPLA design defect claim is expressly preempted because she intends to "impose

different or additional 'tobacco product standards'" contrary to the TCA's preemption clause.

(D.E. 37-1 at 13–14 (citing 21 U.S.C. § 387p(a)(2)(A)); D.E. 51 at 2).

Puff Bar's argument puts the cart before the horse.  For example, Puff Bar asserts, without

further elaboration, that Plaintiff's NJPLA design defect claim would require alterations to the

---

[14] The FDCA defines "label" as a "display of written, printed, or graphic matter upon the immediate container of an article[.]"  21 U.S.C. § 321(k).  It defines "labeling" as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."  21 U.S.C. § 321(m).

"construction, components, ingredients, or other properties" of its products.  (D.E. 37-1 at 13.)

Even if Plaintiff's design defect claim did not sound in product liability law, Puff Bar's express

preemption argument would fail because the FDA has not enacted design or product standards for

ENDS products such as PB e-cigarettes.  *See In re JUUL Labs*, 2020 WL 6271173, at *12

(declaring, in the context of plaintiffs' non-product liability product design claims that "[w]ithout

the existence of any defined 'standards', there can be no supposed preemption of state law

standards that are 'different from or in addition to' the federal ones").  Moreover, consistent with

other courts' interpretations, the Savings Clause "expressly preserves state law products liability

claims."  *In re JUUL Labs*, 2020 WL 6271173, at *10; *Colgate II*, 402 F. Supp. 3d at 753.

Accordingly, Plaintiff's NJPLA design defect claim is not expressly preempted.  *See In re JUUL

Labs*, 2020 WL 6271173, at *12 (stating that the "express [S]avings [C]lause . . . preserves the

majority of claims in the [complaint] . . . that sound in product liability under applicable state

law"); *Colgate II*, 402 F. Supp. 3d at 753 (finding, in relation to plaintiff's design and

manufacturing defect claims, that defendant's "preemption argument fails because the TCA

expressly does not preempt claims under state product liability law") (citing 21 U.S.C. § 387p(b)).

Puff Bar also contends that Plaintiff's NJPLA failure to warn claim is expressly preempted

by Section 916(a)(2)(A) because she requires additional or different labeling requirements than

those promulgated by the FDA.[15]  (D.E. 37-1 at 13–16; D.E. 51 at 5–6.)  The sole area where states

may potentially impose requirements that are "different from, or in addition to" those enacted by

the FDA "is the limited nicotine warning required by 21 C.F.R. § 1143.3."  *In re JUUL Labs*, 2020

---

[15] Plaintiff lists at least seven examples of Defendants' alleged failure to warn.  (D.E. 33 ¶ 150.)  For example, among others, Plaintiff claims that Defendants should have warned or instructed that: (i) Puff Bar products contain two to three times more nicotine than a traditional pack of cigarettes; (ii) "Puff Bar products cause, maintain, or aggravate nicotine addiction and subject consumers," particularly minors, "to the risks of concomitant health hazards" from addictive behavior; and (iii) Puff Bar products are potentially life-threatening and carry risks such as "lung injuries, seizure, strokes, heart attacks, and cardiovascular injuries, behavioral, cognitive and mental health injuries among other harmful effects."  (*Id.*)

WL 6271173, at *10.  Accordingly, the only claims subject to express preemption are those that would require labeling that is "different from or in addition to" the Nicotine Addictiveness Label Requirement.  *Id.*  As framed in *In re JUUL Labs*, the issue becomes "how to reconcile [Section 916(a)(2)(A)'s] strong preemption provision with an equally strong [S]avings [C]lause."  *Id.* at *12.

This Court finds that rather than express preemption, implied preemption may serve to preclude certain product liability claims that are otherwise "saved" under the Savings Clause.  *See id.* at *12, *14 (noting that while plaintiffs dispute whether the analysis previously applied to their labeling claims in *Colgate I* and *Colgate II* extends to failure to warn product liability claims, the Savings Clause ultimately preserves "state authority over [product liability] claims that are not expressly preempted, [such that] the issue becomes one of implied, not express, preemption"); *Natl. Fedn. of the Blind v. United Airlines Inc.*, 813 F.3d 718, 731 (9th Cir. 2016) ("[T]he inclusion of either a saving clause or an express preemption clause within a statutory scheme does not foreclose the application of ordinary implied preemption principles."); *accord In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.*, 959 F.3d 1201, 1213–14 (9th Cir. 2020).  Thus, Plaintiff's NJPLA failure to warn claim is not expressly preempted.[16]

---

[16] Although Judge Orrick addressed express preemption in *Colgate I* and *Colgate II*, the analysis predominately focused on false advertising and related consumer protection claims that are not presently before this Court.  *See Colgate I*, 345 F. Supp. 3d at 1189–90; *Colgate II*, 402 F. Supp. 3d at 745.  Here, notwithstanding Plaintiff's contention that "[t]he state consumer laws [she] seek[s] to enforce have the *identical standard*" as the TCA (*see* D.E. 44 at 9–10, 15), the Complaint does *not* lodge claims under any state consumer protection law.  (*See* D.E. 33.)  In fact, the operative Complaint removed a prior cause of action under the New Jersey Consumer Fraud Act.  (*Compare* D.E. 1 ¶¶ 157–63, *with* D.E. 33.)

Furthermore, even if *Colgate I* and *Colgate II* preempted *product liability claims* for failure to warn (on product labeling only) about the higher potency and addictiveness of defendants' e-liquid formula as compared to traditional cigarettes, *see Colgate II*, 402 F. Supp. 3d at 751, this Court does not follow suit.  Unlike *In re JUUL Labs*, neither *Colgate I* nor *Colgate II* explicitly analyzed the Savings Clause against a failure to warn product liability claim.  *See In re JUUL Labs*, 2020 WL 6271173, at *10 (noting that the Savings Clause preserving state law product liability claims was "an issue only touched upon in passing in *Colgate II*").

Under the implied preemption framework, it is possible that the Nicotine Addictiveness Label Requirement could preempt a "saved" product liability claim if a plaintiff seeks to impose a warning or disclosure that addresses nicotine addictiveness *and* either "frustrate[s] Congressional intent" *or* thwarts a defendant's ability to comply with both the federal standard and a state's product liability law. *In re JUUL Labs*, 2020 WL 6271173, at *18; *see Roth*, 651 F.3d at 374. Because the parties have not briefed this narrow question—specifically as it relates to the promulgated Nicotine Addictiveness Label Requirement and Puff Bar's allegedly inadequate warnings (*see* D.E. 33 ¶ 150 (alleging at least seven inadequate warnings))—the implied preemption issue will not be considered at this juncture. *See In re JUUL Labs*, 2020 WL 6271173, at *10, *17 (declining to address implied preemption as it relates to the Nicotine Addictiveness Label Requirement for lack of briefing and refusing to speculate about any future regulation or standard that the FDA has yet to adopt).[17]  Instead, Puff Bar raises a different implied preemption argument which is addressed briefly in turn.[18]

### iii.    Implied Preemption

Puff Bar avers that in the alternative, implied preemption is warranted because Plaintiff attempts to circumvent the FDCA's ban on private rights of action by asserting state law product liability claims.  (D.E. 37-1 at 16–20.)  The FDCA provides that "all such proceedings for the

---

[17] For example, defendants' implied preemption argument in *In re JUUL Labs* was premature where plaintiffs' claims *might* conflict with *future* FDA standards that were not yet promulgated.  *In re JUUL Labs*, 2020 WL 6271173, at *17–18.

[18] Furthermore, Plaintiff argues that because Puff Bar products bypassed mandatory premarket review and FDA approval pursuant to 21 U.S.C. § 387j (*see* D.E. 33 ¶ 163), Puff Bar should not be afforded the protections of federal preemption.  (D.E. 44 at 14–16 (citing 21 C.F.R. §§ 28998, 29010).)  First, based on the Complaint, it is unclear whether Puff Bar has applied for premarket approval from the FDA.  (*See generally* D.E. 33.)  In addition to potential implied preemption posed by the current Nicotine Addictiveness Label Requirement, this Court further finds that it would be premature to assess preemption until the FDA either assesses a premarket approval application from Puff Bar and/or issues additional rules or regulations concerning ENDS products generally.  *See In re JUUL Labs*, 2020 WL 6271173, at *10.

enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337(a).  Although the FDCA does not create a private right of action, "the standards enunciated by the FDCA may be used to support an independent cause of action." *Abraxis Bioscience, Inc. v. Navinta LLC*, No. 07-1251, 2008 WL 2967034, at *7 (D.N.J. July 31, 2008) (finding that certain common law claims survived because they were supported by, but not premised entirely on, an overlapping FDCA standard) (collecting cases).  For example, where common law tort claims stem from an alleged "failure to use reasonable care in the production of a product" rather than from alleged FDCA violations only, such claims are not impliedly preempted.  *Silver v. Medtronic, Inc.*, 236 F. Supp. 3d 889, 898 (M.D. Pa. 2017) (finding that defendant's implied preemption argument pursuant to 21 U.S.C. 337(a) was "easily reject[ed]" where plaintiff's common law claims were premised on defendant's alleged failure to use reasonable care) (citing *Medtronic*, 518 U.S. at 481); *see Freed v. St. Jude Med., Inc.*, 364 F. Supp. 3d 343, 352 (D. Del. 2019) (noting that "the conduct on which the plaintiffs' claim is premised must . . . traditionally give rise to liability under state law[] . . . even if the FDCA had never been enacted").  Here, akin to the cases above, Plaintiff's NJPLA claims are not solely based on alleged FDCA violations.  Rather, the allegations arise from Puff Bar's alleged duty under state law "to make/sell a product that is reasonably safe," and "to provide adequate warnings and/or instructions about the dangers that Puff Bar products present."  (D.E. 33 ¶¶ 132, 150.)  Plaintiff does not allege, nor does Puff Bar explain, how these duties or standards of care arose from Puff Bar's obligations under the FDCA.  (*See generally id.*; D.E. 37-1.)  Thus, Puff Bar's implied preemption argument fails.  *See, e.g.*, *Abraxis*, 2008 WL 2967034, at *7; *see also Silver*, 236 F. Supp. 3d at 898.

### ii.    Count I: NJPLA Claims

Pursuant to the New Jersey Product Liability Act:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J. Stat. Ann. § 2A:58C-2.  There are three types of NJPLA claims, including: (1) design defect, (2) manufacturing defect, or (3) warnings defect.  *Mendez v. Shah*, 28 F. Supp. 3d 282, 296 (D.N.J. 2014) (citing *Roberts v. Rich Foods, Inc.*, 654 A.2d 1365 (N.J. 1995); *Dziewiecki v. Bakula*, 361 824 A.2d 241 (N.J. App. Div. 2003)).

The standard of liability for any NJPLA claim is that the product at issue "was not reasonably fit, suitable or safe for its intended purpose." *Cornett v. Johnson & Johnson*, 998 A.2d 543, 562 (N.J. App. Div. 2010).  A plaintiff must establish four elements to prove a violation of the NJPLA: "(1) the product was defective; (2) the defect existed when the product left the hands of the defendant; (3) the defect proximately caused injuries to the plaintiff; and (4) the injured plaintiff was a reasonably foreseeable user." *Hindermyer*, 419 F. Supp. 3d at 823 (citing *Myrlak v. Port Auth. of New York & New Jersey*, 723 A.2d 45, 52 (N.J. 1999)).

### a.  Design Defect

In addition to the standard above, a plaintiff alleging design defect must prove that there is an alternative technology that is available, feasible, and practical which "would have reduced or prevented the plaintiff's harm without substantially impairing the reasonably anticipated or intended function of the product." *Hindermyer*, 419 F. Supp. 3d at 824 (citing *Cavanaugh v. Skil*

*Corp.*, 751 A.2d 518, 520 (N.J. 2000)).  At the pleading stage, a plaintiff must allege "either that the product's risk [of harm] outweighs its [utility], or that an alternate design exists, in order to state a claim for a design defect" under the NJPLA.  *Mendez*, 28 F. Supp. 3d at 297–98 (quoting *Schraeder v. Demilec (USA) LLC*, 2013 WL 5770670, at *1–2 (D.N.J. October 22, 2013)); *Lewis v. Am. Cyanamid Co.*, 715 A.2d 967, 980 (N.J. 1998) ("A plaintiff must prove either that the product's risks outweighed its utility or that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm.").  The risk utility analysis involves examination of seven factors;[19] however, "the issue upon which most claims will turn is [] proof . . . of a reasonable alternative design[.]"  *Gremo v. Bayer Corp.*, 469 F. Supp. 3d 240, 255 (D.N.J. 2020).

Puff Bar argues that it cannot be liable under the NJPLA's "consumer expectation" affirmative defense because (i) "[t]he characteristic[] of the product," specifically nicotine addictiveness, "[is] known to the ordinary consumer or user," (ii) "the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product" and (iii) the unsafe, inherent aspect "would be recognized by the ordinary person who uses or consumes the product." (D.E. 37-1 at 23–24 (quoting N.J. Stat. Ann. § 2A:58C-3(a)(2)).)  In addition, Puff Bar claims that it disclosed the allegedly inherent, unsafe characteristic by inclusion of the Nicotine Addictiveness Label Requirement on its products.  (*Id.* at 24.)

Puff Bar's arguments are without merit.  Plaintiff alleges that Puff Bar products are defective because they deliver more nicotine than traditional cigarettes and other e-cigarettes while stating that their individual nicotine levels are equivalent to one package of combustible cigarettes. (D.E. 33 ¶¶ 36, 38, 114, 116–17, 136, 140.)  Meanwhile, one PB e-cigarette allegedly contains two

---

[19] *See Grier v. Cochran Western Corp.*, 705 A.2d 1262, 1269 n.4 (N.J. 1998) (listing the seven risk utility factors).

to three times more nicotine than one traditional package of cigarettes. (*Id.* ¶¶ 11, 38, 115, 130, 136, 140.) Thus, despite inclusion of both the Nicotine Addictiveness Label Requirement and the percentage of nicotine salt on some products, as reflected in one image in the Complaint (*see* D.E. 33 ¶ 69), it remains unclear whether the purportedly higher nicotine potency would be known to ordinary consumers or users. Relevant here, it is further alleged that Puff Bar intentionally markets its products to youth and adolescents—such as J.S.—who are particularly vulnerable to nicotine's addictive effects. (*Id.* ¶¶ 4–5, 37–39, 68–79, 86, 130–31, 140, 144, 162.) Thus, the "ordinary person" at issue in this action encompasses youth and adolescent consumers or users. Significantly, Plaintiff maintains that Puff Bar knew or should have known that young consumers "would not fully realize the dangerous and addictive nature" of its products, "the long-term complications nicotine addiction can present," or that because of their "youth, inexperience and/or immaturity of judgment, [they] would recklessly disregard such risks." (*Id.* ¶ 144.) In addition, the Complaint indicates that young consumers are increasingly using e-cigarettes such as those manufactured by Puff Bar. (*Id.* ¶¶ 21–32 (discussing the e-cigarette epidemic among youth in the United States).) These allegations are sufficient to withstand Puff Bar's "consumer expectation" affirmative defense at the motion to dismiss stage.[20] *See Fabricant v. Intamin Amusement Rides Int. Corp. Est.*, No. 19-12900, 2020 WL 373348, at *4 (D.N.J. Jan. 23, 2020) (declining to dismiss NJPLA design defect claim under the "consumer expectation" affirmative defense because the court could not determine whether the risks at issue would be known to ordinary consumers solely based on the standards and comparisons contained in the pleading); *see also Smith v. Covidien LP*, No. 19-11981, 2019 WL 7374793, at *4 (D.N.J. Dec. 31, 2019).

---

[20] Moreover, at least one court has found that the affirmative defense cited by Puff Bar cannot serve as a basis for dismissal at the pleading stage. *Hindermyer*, 419 F. Supp. 3d at 825 n.2 (citing *Stanziale v. Nachtomi*, 416 F.3d 229, 242 (3d Cir. 2005) ("[A]ffirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6).")).

Notwithstanding Puff Bar's contentions to the contrary (*see* D.E. 37-1 at 24 n.12), when viewed in totality, Plaintiff sufficiently alleges that Puff Bar's products contain high amounts of nicotine and are thus more addictive than necessary such that the risks of nicotine addiction, particularly among the youth, do not outweigh the benefits of Puff Bar's current product designs. (*See* D.E. 33 ¶¶ 21–32, 37–38, 78–113, 136–37); *see also Colgate II*, 402 F. Supp. 3d at 753. Moreover, Plaintiff proffers alternative designs such as products that "deliver[] less nicotine per puff" or products that contain less potent and less addictive nicotine formulae that would *not* reduce the harsh "throat hit" common to traditional cigarettes and earlier generations of e-cigarettes. (*See* D.E. 33 ¶¶ 137–39.) These allegations are sufficient to withstand Puff Bar's motion to dismiss.[21]

#### b.  Failure to Warn

For failure to warn NJPLA claims, a manufacturer is liable for harm "if the product does not contain an adequate warning or instruction." *Sich v. Pfizer Pharm.*, No. 17-2828, 2017 WL 4407930, at *3 (D.N.J. Oct. 4, 2017) (citing N.J. Stat. Ann. § 2A:58C-4). A manufacturer has a duty to warn about risks or dangers associated with its product that it either knew or "should have known on the basis of reasonably obtainable or available knowledge."[22] *Feldman v. Lederle Labs.*, 479 A.2d 374, 376 (N.J. 1984). The absence of a necessary adequate warning constitutes a breach of the manufacturer's duty and the resulting defect. *Toms*, 304 F. App'x at 126 (citing *Coffman v. Keene Corp.*, 628 A.2d 710, 716 (N.J. 1993)); *Banner v. Hoffmann-La Roche Inc.*, 891 A.2d 1229, 1236 (N.J. App. Div. 2006).

---

[21] The remaining elements of Plaintiff's NJPLA design defect claim are not addressed because Puff Bar does not contest the sufficiency of allegations beyond the arguments analyzed above. (*See* D.E. 37-1.)

[22] Thus, a claimant "must first establish that there was a latent danger of which the manufacturer had a duty to warn." *Toms v. J.C. Penney Co.*, 304 F. App'x 121, 127 (3d Cir. 2008) (citing *Mathews v. University Loft Co.*, 903 A.2d 1120, 1125 (N.J. 2006)). A duty to warn does not exist when the alleged danger is obvious. *Mathews*, 903 A.2d at 1128–29.

An adequate warning is "one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product."  N.J. Stat. Ann. § 2A:58C-4.  The adequacy is determined in part by "taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used."  *Id.*  In addition, "[i]f the warning or instruction given . . . has been approved or prescribed by the [FDA] under the [FDCA] . . . , a rebuttable presumption shall arise that the warning or instruction is adequate."  *Id.*  Thus, parties "'who comply with FDA requirements are granted a rebuttable presumption that the labeling is adequate.'"  *Chester v. Boston Sci. Corp.*, No. 16-02421, 2017 WL 751424, at *11 (D.N.J. Feb. 27, 2017) (quoting *Cornett*, 48 A.3d at 1056, *abrogated on other grounds by McCarrell v. Hoffmann-La Roche, Inc.*, 153 A.3d 207 (N.J. 2017)).  There are stricter pleading requirements for any plaintiff who intends to overcome this presumption.  *Cornett*, 48 A.3d at 1056.  The complaint "must plead specific facts alleging 'deliberate concealment or nondisclosure of after-acquired knowledge of harmful effects,' or 'manipulation of the post-market regulatory process[.]'"  *Id.* (internal citations omitted).

Puff Bar avers that it is exempt from liability because Plaintiff cannot overcome the rebuttable presumption created by its compliance with the FDA's Nicotine Addictiveness Label Requirement.  (D.E. 37-1 at 22–23 (citing N.J. Stat. Ann. § 2A:58C-3(a)(3) (providing that the "manufacturer or seller shall not be liable if: . . . [t]he harm was caused by an unavoidably unsafe aspect of the product and the product was accompanied by an adequate warning or instruction as defined in section 4 of this act")) (citing N.J. Stat. Ann. § 2A:58C-4).)  First, Puff Bar's argument necessarily assumes that its products comply with the Nicotine Addictiveness Label Requirement even though there is no reference to the warning in the pleading.  (*See generally* D.E. 33.)  At

most, the Court deciphers the warning on two product images in the Complaint.  (*See id.* ¶ 69.)

Assuming Puff Bar included the Nicotine Addictiveness Label Requirement on its products and

complied with all size, font, and color specifications, Plaintiff must sufficiently rebut the resulting

presumption to establish a valid claim for relief.  *See Fellner v. Tri-Union Seafoods*, *L.L.C.*, No.

06-0688, 2010 WL 1490927, at *6 (D.N.J. Apr. 13, 2010) (stating that "a defendant's compliance

with FDA regulations is not conclusive, and in the appropriate circumstances the presumption can

be overcome" on a motion to dismiss) (citing *McDarby v. Merck & Co., Inc.*, 949 A.2d 223, 252

(N.J. App. Div. 2008); *Perez v. Wyeth Lab.*, A.2d 1245, 1251 (N.J. 1999)).  Akin to *Fellner*,

Plaintiff alleges that Puff Bar "intentionally downplayed, misrepresented, concealed, and failed to

warn of the heightened risk of nicotine exposure and addiction."[23]  (D.E. 33 ¶ 155); *see Fellner*,

2010 WL 1490927, at *6 (finding the pleading sufficient to rebut the presumption where defendant

allegedly "conceal[ed], suppress[ed], omit[ed] and/or fail[ed] to disclose material information

regarding the presence of . . . harmful compounds in its Tuna Products"); *cf. Vicente v. Johnson &*

*Johnson*, No. 20-1584, 2020 WL 7586907, at *13 (D.N.J. Dec. 21, 2020) (holding that plaintiff

failed to rebut the presumption because no facts were alleged to support "deliberate concealment

or nondisclosure of harmful effects").  The allegations regarding the e-cigarette epidemic and Puff

Bar's intentional use of a nicotine salt formula to reduce the "throat hit" and "maximize buzz and

minimize harshness" further the notion of concealment and nondisclosure.  (D.E. 33 ¶¶ 21–32, 36,

39, 41.)  Accordingly, the allegations contained in the Complaint are sufficiently plausible to

overcome the rebuttable presumption, *see* N.J. Stat. Ann. § 2A:58C-4, at the pleading stage.[24]

---

[23] *Fellner* is applicable despite Puff Bar's attempt to distinguish that case from the one at bar.  (D.E. 51 at 12.)  The *Fellner* court's analysis assumed defendant's compliance with applicable FDA regulations such that the *absence* of labels was lawful and triggered the rebuttable presumption.  *Fellner*, 2010 WL 1490927, at *6.

[24] The remaining elements of Plaintiff's NJPLA failure to warn claim are not discussed because Puff Bar does not contest the sufficiency of allegations beyond the argument addressed above.  (*See* D.E. 37-1.)

ii.    **Count II: Claim for Injunctive Relief**

Finally, Puff Bar moves to dismiss Count II of the Complaint which is a separate cause of action for a preliminary and permanent injunction.  (D.E. 33 ¶¶ 159–65.)  Because an injunction is a remedy and not a cause of action, "[a] separate claim for injunctive relief is unnecessary." *Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 681 (E.D. Pa. 2018) (citing *Birdman v. Office of the Governor*, 677 F.3d 167, 172 (3d Cir. 2012)).  Accordingly, Plaintiff's cause of action for injunctive relief is dismissed.  *See ASAH v. N.J. Dep't of Educ.*, No. 16-3935, 2017 WL 2829648, at * 12 (D.N.J. June 20, 2017) ("[C]ourts in this circuit routinely dismiss stand-alone counts for . . . injunctive relief, since such claims are requests for remedies, and not independent causes of action."); *Kabbaj v. Google Inc.*, 592 Fed. App'x. 74, 75 n.2 (3d Cir. 2015) (affirming dismissal of a count for injunctive relief because it is a remedy "rather than [a] cause[] of action"); *Chruby v. Kowaleski*, 534 Fed. App'x. 156, 160 n.2 (3d Cir. 2013).

## IV.    CONCLUSION

For the reasons set forth above, Puff Bar, Patrick Beltran, and Nick Minas' Motions to Dismiss are **GRANTED** with respect to Plaintiff's second cause of action for injunctive relief and are **DENIED** in balance.  Umais Abubaker, Shahid Shaikh, and Cool Clouds Distribution, Inc.'s Motion to Dismiss is **GRANTED**.  An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:      Clerk
cc:         Leda D. Wettre, U.S.M.J.
            Parties